IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHEILA F HARRIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | **2:11-cv-1809-AKK** |
| **TYSON FOODS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Sheila F. Harris filed this lawsuit against Tyson Foods, Inc., her former employer, alleging that Tyson discharged her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[1] Doc. 1. Harris worked for Tyson with no significant infractions for nineteen years. However, after receiving bereavement pay on two occasions for the deaths of her maternal and paternal grandmothers, Harris submitted a third claim for her "grandmother." Tyson paid the claim and subsequently received an anonymous

---

[1] The court previously granted Tyson's motion to dismiss Harris' Title VII retaliation claim. Doc. 18. Harris also pled an outrage claim but concedes that summary judgment is due to be granted on the outrage claim. Docs. 1 at ¶ 36; 26 at 11 n.2. Accordingly, the court **GRANTS** the motion on Harris' outrage claim.

report informing it of the fraudulent nature of Harris' claim.  Tyson investigated the alleged fraud and eventually discharged Harris, which triggered this lawsuit.

The court has for its consideration Tyson's motion for summary judgment, which is fully briefed and ripe for resolution.  Docs. 19, 26, 28.  Unfortunately for Harris, based on this record, she has failed to establish her claims.  Therefore, for the reasons set out fully below, the court **GRANTS** Tyson's motion on all claims.

## I.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation

marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Id*.  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,1563 (11th Cir. 1989)).

## II.  FACTUAL BACKGROUND

Tyson hired Harris, an African American female, as a deboner in its poultry processing facility in Blountsville, Alabama in 1990.  Docs. 1 at ¶ 12; 22 at 3, 9; 23 at 1.  Harris also worked in evisceration, rehang, and pack out, and was working in sanitation at the time of her discharge.  Doc. 22 at 10.  From all reports, Harris performed her duties with distinction.

Tyson offers its employees bereavement leave pursuant to its Bereavement Compensation Policy.  Doc. 22-1 at 12.  Relevant to this lawsuit, the Policy provides that employees are eligible for three days of paid leave for the death of an immediate family member, which the Policy defines as a "spouse, children, parents, siblings, father/mother-in-law, sister/brother-in-law, son/daughter-in-law,

grandparents, grandparents-in-law, grandchildren, stepparents, stepsiblings, and half siblings." *Id*. For other family members, employees are eligible for one day of unpaid leave. *Id*. Harris was familiar with the Policy and had utilized it for time off with pay to attend funerals for immediate family members, including her maternal and paternal grandmothers, and for time off without pay to attend the funeral of her uncle. Doc. 22 at 11, 12, 16; 22-1 at 10.

In January 2010, David Faust, Harris' direct supervisor, approved Harris' leave request to attend Ruth Parker's funeral. Docs. 22 at 10; 22-1 at 16-17. As a result, Harris missed work on January 27-29, 2010. Doc. 22-1 at 16. When Harris returned to work, she submitted a Bereavement Pay Form in which she identified Parker as her grandmother. *Id*. Consequently, Tyson approved the bereavement pay request and paid Harris $272.40 for her three-day absence. Doc. 23 at ¶ 4. Sometime thereafter, Vicky Craig, Shift Human Resources Manager, received a telephone call from an anonymous person informing Craig that Parker was not Harris' grandmother. Docs. 23 at ¶ 5. As a result, Craig interviewed Harris on February 4, 2010, regarding her relationship to Parker. Although Harris admitted that she was not related to Parker, she described Parker as being "like" a grandmother because Parker "raised her up from a little child" and "ran together" with Harris' mom. Doc. 22-1 at 18-19. Harris volunteered to refund the

bereavement pay. *Id*. at 20. Tyson rejected the offer and instead discharged Harris for misrepresenting her eligibility for bereavement pay. Doc. 23 at ¶ 6. At the time of her discharge, Harris was fifty-five years old. Doc. 22 at 3.

### III. ANALYSIS

*A.     Title VII and ADEA claim*s

The *McDonnell Douglas* framework applies here since Harris is using circumstantial evidence to prove her discrimination claims.[2] *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). "A plaintiff must first establish a prima facie case of age or race discrimination by showing that she was (1) a member of the protected class; (2) qualified for her current position; (3) subject to an adverse employment action; and (4) treated less favorably than a similarly-situated employee outside her protected group." *Thomas v. Humana Health Plan, Inc.*, 457 Fed. App'x 819, 821 (11th Cir. 2012), *citing Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). "In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar

---

[2]"Direct evidence is 'evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (citation omitted). "'[O]nly the most blatant remarks whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination." *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (citations and quotation marks omitted). There is no direct evidence presented here.

conduct and are disciplined in different ways." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (citation omitted).  Furthermore, the "quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citation omitted).

After the plaintiff establishes a prima facie case, "then the defendant must show a legitimate, non-discriminatory reason for its employment action." *Burke-Fowler*, 447 F.3d 1323 (citation omitted).  "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id*.  "To show pretext, a plaintiff may demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the proffered reasons for the employment action such that 'a reasonable factfinder could find them unworthy of credence.'" *Cooper v. So. Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (quotation marks omitted).  "However, the plaintiff cannot merely quarrel with the wisdom of the employer's reason, but 'must meet the reason head on and rebut it.'" *Licausi v. Symantec, Corp.,* 378 Fed. App'x 964, 966 (11th Cir. 2010) (citation omitted).

The only issue of contention here is whether Harris has established that

Tyson treated her less favorably than similarly situated employees outside of her protected class.  In that respect, Harris identifies two purported similarly situated employees – Sue Plodzien, a white female over the age of 50, and Felton Anderson, an African American male over the age of 45 – that she contends Tyson treated more favorably by allowing them to repay stolen money and to keep their jobs.[3]  Docs. 26 at 6, 7; 23 at ¶ 8.  Tyson contends that "neither Plodzien nor Anderson committed the same or similar misconduct" and, as such, are not similarly situated to Harris.  Doc. 20 at 14.  The court addresses these alleged comparators below.

    1.    <u>Harris fails to establish a prima facie case of race and age discrimination</u>

Harris contends that she is similarly situated to Plodzien and Anderson because they "obtained money from Defendant to which they were not entitled." Doc. 26 at 6.  The evidence shows that contrary to Tyson's policy that employees first consult their supervisors regarding wage disputes, Plodzien and Anderson consulted a payroll clerk instead and received additional wages for a purported under-payment.  Doc. 23 at ¶ 8.  Tyson subsequently discovered that the payroll

---

[3]The court notes that Anderson is not a proper comparator to establish circumstantial evidence of race or age discrimination because he is a member of both of Harris' protected classes.  Doc. 23 at ¶ 8.

clerk issued the additional wages in error. *Id*. Consequently, Tyson issued Plodzien and Anderson written warnings, suspended them for failing to follow the proper chain of command, and required that they repay the wages they received in error. *Id*. The opportunity to repay the wages, which Tyson declined to offer Harris, is the reason for Harris' contention that Tyson treated her less favorably than Plodzien and Anderson. Doc. 26 at 6.

Unfortunately for Harris, she is not similarly situated to Plodzien and Anderson because they violated different policies – a fact Harris acknowledges with respect to Plodzien:

> Q: Do you know what [Plodzien] did to get suspended?
> * * * *
> Harris: Hers was a little different from mine. I think she told us she was – they said that she took money from the – got paid for the days, or one or two days, that she didn't work; and she went up there, and then she, I guess, paid the money back or they took it back from her, and she comes back to work.
>
> Q: Do you know what happened there, why she was erroneously paid for time she didn't work?
>
> Harris: All I know, she just told us they laid her and her old man off, said that they had paid her money that she didn't receive – that she didn't work for; and they called up there, and they talked to her. They laid her off for three days; she went back to work; and they restored her job.

Doc. 22 at 24. Moreover, even ignoring the difference in policy violations,

Plodzien and Anderson are not similarly situated because Harris presented no evidence to suggest that Plodzien and Anderson lacked an honest belief that their paychecks were inaccurate when they disputed their pay with the payroll clerk. Conversely, Harris knew that she had no real relationship to Parker when she requested and received bereavement pay for Parker's death. Doc. 22-1 at 19-20. While Harris maintains that Parker was "like" a grandmother, the fact remains that she previously requested and received bereavement pay for her maternal and paternal grandmothers. In other words, unlike Plodzien and Anderson, the evidence establishes that Tyson had a reasonable basis to conclude that Harris intended to commit fraud. Therefore, Plodzien and Anderson are not proper comparators and, as such, Harris has failed to meet her burden of establishing a prima facie case of race and age discrimination. *Holifield v. Reno*, 115 F.3d 1555. 1562-63 (11th Cir. 1997).

    2.    <u>Pretextual</u>

Alternatively, summary judgment is warranted because Harris failed to rebut Tyson's contention that it discharged her for misrepresenting information on her bereavement pay application. Perhaps because she cannot attack Tyson's articulated reason, Harris contends instead that Tyson is collaterally estopped from presenting a non-discriminatory reason based on the Alabama Department of

Industrial Relations ("ADIR") finding that Harris' representation that Parker was her grandmother was not a dishonest act.[4]  As a result, Harris contends that "the issue of Plaintiff's termination of employment . . . has already been decided by ADIR."  Doc. 26 at 8-10.  While the ADIR concluded that Harris' representation did not qualify as a dishonest act that barred Harris from receiving <u>unemployment benefits</u>, that finding has no relevance on Tyson's reason for discharging Harris or any preclusive effect in this court.  Indeed, it is settled law that unreviewed state administrative proceedings have no preclusive effect over Title VII or ADEA claims.  *Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991); *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986); *see also Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 610 (11th Cir. 2004).  Therefore, where, as here, there is no evidence that the ADIR's determination has undergone any

---

[4]Sometime after her discharge, Harris applied for unemployment benefits with the ADIR. Doc. 26-2 at 4.  Eventually, the ADIR held a hearing to determine whether Tyson discharged Harris due to a dishonest act in connection with her employment.  *Id*.  Ultimately, the Administrative Hearing Officer qualified Harris for unemployment benefits based on the following finding:

> While the claimant's interpretation of the individual in question in this case as a grandmother may not meet the intention of the employer's policy, the preponderance of evidence shows that this individual did become an immediate family member to the claimant in effect as a parent and was known as the claimant's grandmother.  Thus, it cannot be found that the claimant committed a dishonest act when she informed her employer that her grandmother had passed away.

*Id*.  Tyson did not appeal the decision.

judicial scrutiny, the court declines to give it any preclusive effect.

Moreover, even if the ADIR finding has preclusive effect, summary judgment is still due because Harris failed to make any showing of racial or age-based animus.  In contrast, Tyson has presented evidence that it treated Harris no differently than a similarly situated employee outside of her protected classes who committed the same infraction.  Doc. 23 at ¶ 7.  Specifically, Tyson discharged Darrin Shane Burns, a 29 year old white male, for committing the same infraction as Harris.  *Id*.  Like Harris, Burns requested three days of bereavement pay to attend his purported grandmother's funeral.  *Id*.  Tyson later discovered that the deceased was not related to Burns and was instead someone Burns considered a "grandmother."  *Id*.  Although Burns stated that he misunderstood the Policy and failed to read it, Tyson discharged him nonetheless for "giving false information."[5]  *Id*.  In light of the fact that Tyson discharged Burns, a similarly situated employee outside of Harris' protected classes, the court cannot infer any racial or age-based animus in Tyson's decision to discharge Harris.

---

[5]Harris acknowledged that Burns' situation was identical to hers:

Q – "Do you agree with me that Mr. [Burns'] situation is the same as yours?"

Harris – "It's definitely the same."

Doc. 22 at 23.

Unfortunately for Harris, despite her nineteen year history of an otherwise unblemished record, she submitted a false claim for paid bereavement leave. While Harris may believe discharge is harsh or unfair given her long tenure and offer to pay back the money, "Title VII [and the ADEA] address[ ] discrimination. Title VII [and the ADEA are] not a shield against harsh treatment at the workplace." *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1187 (11th Cir. 1984) (citations omitted). Moreover, "[a]lthough [the employer's] decision to fire [the plaintiff] and its refusal to reconsider that decision, might seem unfair or even 'incredible' to outside observers, [the plaintiff] cannot prevail in h[er] Title VII [or ADEA] action for [s]he has not established discriminatory intent." *Id.* Put differently, it is completely within Tyson's right to enforce its policies and make business decisions without second guessing from the courts, especially when, as here, the evidence shows that Tyson enforced its policies in a non-discriminatory fashion. *Wilson*, 376 F.3d at 1092 (citation omitted) ("The role of this Court 'is to prevent unlawful [ ] practices, not to act as a super personnel department that second-guesses employers' business judgments.").

## IV. CONCLUSION

Based on the record before it, no evidentiary basis exists for the court to find that Harris can establish a prima facie case of race or age discrimination or

that Tyson's proffered reasons for her discharge are pretextual. Therefore, the court **GRANTS** Tyson's motion for summary judgment. Accordingly, Harris' claims are **DISMISSED** with prejudice.

Done the 28th day of December, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE